IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| v. | ) Case No. 22-cr-40-JEB |
| SANDRA WEYER, | ) |
| Defendant. | ) |

**SANDRA WEYER'S RESPONSE TO THE GOVERNMENT'S SENTENCING MEMORANDUM**

Sandra Weyer, by counsel, submits this brief response to the government's sentencing memorandum. ECF 58. The government's submission makes factual claims that are not supported by evidence. Its request for a sentence of 30 months' incarceration is dramatically inconsistent with its charging decisions, and with the sentences imposed, in cases involving protesters who accompanied Weyer the entire day of January 6. The government neglects to inform the Court about the existence of those closely related cases.

    A.    **The government's inaccurate factual assertions**

In an introductory section, the government summarizes facts that it believes justify a sentence of 30 months' incarceration. ECF 58, p. 2. However, the evidence does not support the government's representations.

**"Weyer was among the first rioters to enter the Capitol Grounds by breaching police barricades on the East Front of the U.S. Capitol."** ECF 58, p. 2. That is inaccurate. The first rioters to enter the Capitol Grounds breached a barricade near the Peace Circle at the west front of the Capitol at approximately 12:55 p.m. *E.g.*, *U.S. v. Nordean*, 21-cr-175-TFK,

1

ECF 855, p. 5.  By 1:00 p.m. the crowd covered the entire Upper West Plaza.  *Id*.  Additional points along the security perimeter, to the northeast, were breached close to 2 p.m.  *Id*.  As the government's sentencing memorandum itself states, the east front breach did not occur until after 2 p.m., an hour after the initial breach at the west front.  ECF 58, p. 5.

**Weyer "admitted that she 'personally helped take down the barricades at the front of the Capitol' and that she was 'laser focused on breaking the barricades.'"** ECF 58, p. 2.  Although virtually every movement of Weyer's at the east front was filmed, no footage depicts the 60-year-old pulling down or breaking barricades.  The Court viewed these clips at trial.  Thus, Weyer did not "admit" to this misconduct but rather took credit for something she did not do.  Weyer is not being punished for embellishing her role in conversation with other protesters.

**"Weyer and the mob marched up the steps and forcibly pushed and shoved their way toward the Rotunda Door. . . Weyer forced her way into the Capitol building pushing past USCP officers."** ECF 58, p. 2.  This representation is false.  No evidence shows Weyer using "force" at any point on January 6—outside or inside the Capitol Building.  No evidence shows Weyer "push[ing]" or "shov[ing]" officers.  The government is given significant latitude in characterizing facts at sentencing.  These inaccurate claims fall outside that zone.

**"While inside [the Capitol], [Weyer] paraded around corridors looking for legislators . . ."** ECF 58, p. 12.  This representation is false.  No evidence permits a fact finder to infer that Weyer was "looking for legislators" in her 10 minutes inside the building.  The Court viewed the relevant video clips at trial.  As soon as Weyer had entered the building, she began loudly asking where her brother, Mike, had gone.  Over the course of the next 10 minutes, she asks, "Where's Mike?" approximately 19 times.  Every area of the building she visits in that brief period of time is preceded by a verbal indication that she is searching for her brother.

Having satisfied herself that her brother was not present in a given room, she turned around and began to search elsewhere. There is no evidentiary support for the government's representation that Weyer was "looking for legislators."[1] It should not have been made.

### B.  The *Nester* and *Korte* cases belie the government's sentencing request here

On January 6, Weyer was accompanied every step of the way by two acquaintances, Lynn Nester and Brian Korte. They have been charged separately. *U.S. v. Korte, et al.*, 22-cr-183-TSC. The government fails to inform the Court about the existence of that case even though it is related to Weyer's. Nester and Korte traveled from Pennsylvania to D.C. with Weyer. Nester and Korte stood with Weyer as the barricades outside the east front came down:



Figure 3: Korte (circled in yellow) watches other rioters remove a metal bike rack from the police line. Moments later Korte surged forward with the mob.

*U.S. v. Korte*, 22-cr-183-TSC, ECF 83, p. 4.

---

[1] The government cites one statement alone in support of this serious claim: upon reaching an abandoned room, Weyer asks, "is anyone there?" ECF 58, p. 12. But, of course, the question does not imply Weyer was searching for legislators specifically. Considering that she had made her desire to locate her brother clear in remarks made immediately before this statement, the most reasonable interpretation of the question is that it was posed with the same object in mind. The government omits that moments beforehand, Weyer asked, "Is anybody back there? Is there a bunch of people back there? I have to see if my brother is back there."

Nester and Korte stood with Weyer at the Rotunda door, during a confrontation between protesters and law enforcement officers:



Figure 6: Korte filming as rioters assault officers who are attempting to guard the Rotunda Door.

*U.S. v. Korte*, 22-cr-183-TSC, ECF 83, p. 7.

"Korte encouraged members of the Oath Keepers militia to enter before him and then followed them inside." *U.S. v. Korte*, 22-cr-183-TSC, ECF 83, p. 13.  Korte and Nester entered and exited the building together with Weyer. *Id.*, p. 10.

Yet Weyer was charged under § 1512(c)(2), while her constant companions Nester and Korte were charged solely with Class B misdemeanors.  In Korte's case, the government requested a sentence of **30 days' incarceration—in contrast to the 30 months' incarceration it requests for Weyer**.  *U.S. v. Korte*, 22-cr-183-TSC, ECF 83, p. 10.  That is so even though Korte's conduct is virtually indistinguishable from Weyer's—by the government's own admission.  The Court imposed a sentence of 21 days' incarceration in Korte's case. *Korte*, 22-

cr-183-TSC, 7/12/2023 Minute Order.[2]

But instead of comparing Weyer's case to those of her constant companions on January 6, the government cites to the sentences imposed in *United States v. William Reid*, 21-cr-316-DLF and *United States v. Matthew Bledsoe*, 21-cr-204-BAH. These are absurd comparisons. Unlike Weyer, Reid actually broke barricades at the Capitol. *Reid*, 21-cr-316-DLF, ECF 35, p. 2. Unlike Weyer, he entered the Capitol through a broken window, having just watched another rioter smash it. *Id.* Unlike Weyer, Reid destroyed property inside the building. *Id.* Unlike Weyer, Reid remained in the Capitol for over an hour and a half and explicitly admitted that his purpose was to "stop the certification." *Id.*, p. 21.

Unlike Weyer—a 60-year-old grandmother—the twentysomething Reid posted a photograph of himself on social media after January 6 in which he vowed future acts of terrorism:



Exhibit 26 at :07

*Reid*, 21-cr-316-DLF, ECF 35, p. 22.

---

[2] Weyer contends that the arbitrary discrepancy between the government's sentencing requests in *Korte* and in this case nicely illustrates the danger of the government's novel § 1512(c)(2) charge. The exact same conduct can be characterized as the novel obstruction offense or a Class B parading misdemeanor. Yet the charges result in incomprehensibly different sentencing requests.

Nor is *Bledsoe* a reasonable comparison. A young and aggressive man like Reid, Bledsoe scaled a wall to breach the Capitol and, unlike Weyer, entered sensitive parts of the Capitol. *Bledsoe*, 21-cr-204-BAH, ECF 228, p. 2. On entering the building, he shouted, "Where are those pieces of shit at?" clearly referring to members of Congress. *Id.* Bledsoe remained in the building more than twice as long as Weyer. *Id.* He climbed on Capitol statuary. *Id.*, p. 22. Perhaps most important, Bledsoe perjured himself at trial. *Id.*, p. 23.

For all these reasons, Weyer submits that the relevant sentence-disparity comparisons are with the protesters whose actions mirrored Weyer's, i.e., the defendants in *U.S. v. Korte, et al.*, 22-cr-183-TSC.

Dated: September 11, 2023          Respectfully submitted,

*/s/ Nicholas D. Smith*
Nicholas D. Smith (D.C. Bar No. 1029802)
1123 Broadway, Suite 909
New York, NY 10010
Phone: (917) 902-3869
nds@davidbsmithpllc.com

*Attorney for Sandra Weyer*

**Certificate of Service**

I hereby certify that on the 11th day of September, 2023, I filed the foregoing submission with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s): Counsel of record.

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

*/s/ Nicholas D. Smith*
Nicholas D. Smith (D.C. Bar No. 1029802)
1123 Broadway, Suite 909
New York, NY 10010
Phone: (917) 902-3869
nds@davidbsmithpllc.com

*Attorney for Sandra Weyer*