UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        v.<br><br>SANDRA WEYER,<br><br>    Defendant. | )<br>)<br>)<br>)<br>) Case No. 1:22-cr-40-JEB<br>)<br>)<br>)<br>)<br>) |

**SANDRA WEYER'S MOTION FOR RELEASE PENDING APPEAL**

Weyer respectfully moves the Court for release pending appeal, pursuant to 18 U.S.C. §§ 3141(b) and 3143(b) and Fed. R. Crim. P. 46(c) & 38(b)(1).  Weyer satisfies the criteria for release, as she poses no flight or safety risk, her appeal is not for the purpose of delay, and she raises a substantial question of law which, if decided in her favor, would likely result in a reduced imprisonment sentence that would expire before her appeal concludes.  In particular, a substantial question exists as to whether the statute underlying Weyer's sole felony conviction, 18 U.S.C. § 1512(c)(2), applies to her conduct on January 6, 2021, in light of the Supreme Court's recent decision to grant certiorari in *United States v. Fischer*, No. 23-5572, 2023 WL 8605748 (Dec. 13, 2023).

**Background**

    **A.  Trial and sentencing**

On June 5, 2023, the Court conducted a two-day bench trial.  As the Court will recall, Weyer traveled to Washington, D.C., on January 6 to attend the former president's political rally. After making her way to the Capitol amidst a large crowd, she observed protesters pulling down barricades positioned at the east front of the building.  Weyer encouraged protesters to "hold your

1

ground" and "don't retreat." Weyer subsequently entered the Capitol through the East Rotunda door and remained in the building for approximately 11 minutes. Most of that time she spent searching for her brother with whom she had lost contact in the tumult.

Weyer was found guilty of the following charges: Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count One); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Two); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Three); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Four); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Five).

On September 14, 2023, the Court sentenced Weyer. As the most serious offense, Weyer's § 1512(c)(2) conviction determined that the controlling Guideline would be U.S.S.G. §2J1.2 ("Obstruction of Justice"), with a base offense level of 14. The Court applied the specific offense characteristic at §2J1.2(b)(2) for substantial interference with "the administration of justice." It also gave Weyer credit for satisfying the criteria for a two-level Zero Point Offender downward adjustment, §4C1.1, though that section was not effective at the time of sentencing. The Court sentenced Weyer to 14 months' incarceration on the § 1512(c)(2) conviction.

In turn, the Court's determination meant that, under the Guidelines, the Court was directed to impose the "total punishment" of 14 months' incarceration on every remaining count of conviction, to the extent permitted by applicable statutory maxima. U.S.S.G. § 5G1.2(b). For that reason, the Court imposed concurrent sentences of 12 months' incarceration on Counts Two and Three and of six months' incarceration on Counts Four and Five, the statutory maxima for all those misdemeanor counts.

Based on its review of the letters submitted on Weyer's behalf, the Court remarked at sentencing that the 60-year-old mother was a valuable member of her community who, among other things, had helped businesses survive the pandemic-era lockdowns.  Weyer filed a notice of appeal on September 28, 2023.  ECF 65.

### B. Weyer's companions were all given misdemeanor pleas and incarceration sentences measured in days

On January 6, Weyer was accompanied every step of the way by two acquaintances, Lynn Nester and Brian Korte.  They were charged separately.  *United States v. Korte*, *et al.*, 22-cr-183-TSC.  The group traveled from Pennsylvania to D.C. that day.  Nester and Korte stood with Weyer as the barricades outside the east front came down:



Figure 3: Korte (circled in yellow) watches other rioters remove a metal bike rack from the police line. Moments later Korte surged forward with the mob.

*Korte*, 22-cr-183-TSC, ECF 83, p. 4.

Nester and Korte stood with Weyer at the Rotunda door, during a confrontation between protesters and law enforcement officers:

[Image on following page]



Figure 6: Korte filming as rioters assault officers who are attempting to guard the Rotunda Door.

*Korte*, 22-cr-183-TSC, ECF 83, p. 7.

"Korte encouraged members of the Oath Keepers militia to enter before him and then followed them inside," according to the government. *Korte*, 22-cr-183-TSC, ECF 83, p. 13. Korte and Nester entered and exited the building together with Weyer. *Id.*, p. 10.

Yet Weyer was charged under § 1512(c)(2), while her constant companions Nester and Korte were charged solely with Class B misdemeanors. Unlike Nester and Korte, Weyer did not receive a misdemeanor plea offer from the government. Critically, she was thus forced to choose between pleading guilty to the offense which the Supreme Court is now reviewing in *Fischer* or proceeding to trial.

In Korte's case, the government requested a sentence of 30 days' incarceration—in contrast to the 30 months' incarceration it requested for Weyer. *Korte*, 22-cr-183-TSC, ECF 83, p. 10. The Court imposed a sentence of 21 days' incarceration for Korte. *Id.*, 7/12/2023 Minute Entry.

C. **Weyer's confinement at FDC Philadelphia**

Weyer surrendered to the BOP on November 15, 2023. Although the Court had recommended that Weyer be assigned to Danbury FCI—a minimum security facility for women—

4

she was, in the event, sent to FDC Philadelphia. Weyer has thus served approximately 45 days of incarceration as of the date of this filing.

Weyer's conditions of confinement have been distressing. The section of the facility to which she has been assigned is experiencing a rodent infestation. Regularly Weyer finds mice and insects in her bedding. Maggots and weevils are a common sight in the food hall. As for nourishment, Weyer's diet has consisted entirely of salad and fruit when it is available in the food hall and crackers from the commissary. When she was last heard from on Friday, December 22, she had not eaten in 40 hours; for the first 40 hours after her arrival, she was not provided with basic necessities. Those who have seen her recently have commented that Weyer's eyes have taken on a sunken appearance.

The sole article of footwear provided to her were shower slippers; because all floors are concrete, she has developed blisters on her feet. As the temperature is kept at approximately 52 degrees at all times, Weyer has had to secure extra clothing from the commissary. It was stolen within two days. The 60-year-old woman is thus regularly cold and hungry. She suffers migraines but cannot gain access to her regular medication in the prison. As a result, her headaches have lasted for days.

A prison counselor has advised Weyer that her BOP recidivism risk assessment calculation generates the lowest numbers the counselor had ever seen:

    Recidivism Risk Assessment (Pattern 01.03.00)
      Risk level inmate....R-MIN
      General Level......R-MIN (-9)
      Violent Level.......R-MIN (-4)

**Argument**

**I.      Standard for release pending appeal**

A court "shall order the release" of an individual pending appeal if it finds:

5

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . ; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in –
>
>> (i) reversal,
>> (ii) an order for a new trial,
>> (iii) a sentence that does not include a term of imprisonment, or
>> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1); *see also United States v. Perholtz*, 836 F.2d 554, 557 (D.C. Cir. 1987). "[I]n in the circumstance described in subparagraph (B)(iv) . . . the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence." § 3143(b)(1).

Weyer satisfies all these criteria for release.

## II. Weyer poses no flight or safety risk

Weyer's conduct since the inception of this case has demonstrated by clear and convincing evidence that she will not flee and is not a safety risk. From June 24, 2021 until the day she reported to prison, Weyer was released on conditions and a personal recognizance bond. Thus, for over two years, Weyer fully demonstrated her compliance with all pretrial release conditions. Indeed, the government did not even seek pretrial detention in Weyer's case. Moreover, the 60-year-old mother was not accused of violence and has no criminal history.

## III. Weyer's appeal raises a substantial question and is therefore not for the purpose of delay

A "substantial question" within the meaning of § 3143(b) is "'a close question or one that very well could be decided the other way.'" *Perholtz*, 836 F.2d at 555 (quoting *United States v. Bayko*, 774 F.2d 516, 523 (1st Cir. 1985)). This standard does not require the Court to

6

find that Weyer's appeal establishes a likelihood of reversal. *See Bayko*, 774 F.2d at 522-23. Rather, the Court must "evaluate the difficulty of the question" on appeal, and grant release pending appeal if it determines that the question is a close one or one that "'very well could be'" decided in the defendant's favor. *United States v. Shoffner*, 791 F.2d 586, 589 (7th Cir. 1986) (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir.1985)).

Here, both the Court and the government have acknowledged, directly and indirectly, that the § 1512(c)(2) challenge posed by Weyer presents a substantial question, particularly in light of the certiorari grant in *Fischer*. For example, in the Court of Appeals, the government has explicitly stated that Weyer's is a substantial question under § 3143(b). *See United States v. John Strand*, 23-3083 (D.C. Cir.), Doc. #2032976, at 8 ("The government does not dispute that, given that the Supreme Court has granted a petition for a writ of certiorari in *Fischer*, [an] appeal of [a] conviction under 18 U.S.C. § 1512 poses a substantial question within the meaning of 18 U.S.C. § 3143(b)(1)(B)."). In addition, this Court recently stayed a Capitol riot defendant's sentencing where his sole felony conviction was under § 1512(c). *United States v. Zink*, 21-cr-191-JEB, 12/28/2023 Minute Order.

It must be emphasized that, if anything, Weyer's challenge is stronger than that of a defendant like the one in *Fischer*. Unlike Fischer, Weyer was not charged with violent or assaultive conduct. She entered the Capitol Building where she wandered around for approximately 11 minutes, searched for her brother, and did not enter the House or Senate Chamber or congressmember's offices. No evidence showed Weyer taking any act to obstruct the joint session beyond the fact of her presence. By the time Weyer entered the Capitol, the Houses had already recessed. If the defendant in *Fischer*, who is accused of assault, has presented a certiorari-worthy question to the Supreme Court—and in the absence of any split

7

of opinion among the Circuits—Weyer's question here is, a fortiori, substantial under § 3143(b).

**IV.     Resolution of this substantial question in Weyer's favor would likely result in a reduced imprisonment sentence that would expire before the appeal concludes**

If decided in Weyer's favor, her appellate challenge to her Section 1512(c)(2) conviction would likely result in a reduced imprisonment sentence that would expire before her appeal concludes.  § 3143(b)(1)(B)(iv).

Weyer's sentence of 14 months' incarceration is driven entirely by the § 1512(c) conviction under review in *Fischer*.  The one-year and six-month sentences imposed by the Court on the remaining misdemeanor counts were dictated not by the facts and circumstances of Weyer's case but by the Guidelines rule directing the Court to impose the "total punishment" (of 14 months' incarceration) on every count of conviction to the extent allowable by statutory maxima.  U.S.S.G. § 5G1.2(b).

Absent the "total punishment" Guideline, the Court likely would not have imposed those sentences on Weyer's misdemeanor counts.  This can be shown in several ways.  First, Weyer's co-defendants, who engaged in identical conduct, were not even charged under § 1512(c) and were given misdemeanor plea offers, unlike Weyer.  *Korte*, 22-cr-183-TSC, ECF 83.  One of them, Korte, has been sentenced—to 21 days' incarceration.  Already, Weyer has served over twice that amount of time.

Significantly, Weyer never had an opportunity to avoid expending judicial resources by accepting a misdemeanor plea offer.  Instead, she was handed a Sophie's choice: plead guilty to an offense that would ultimately be reviewed by the Supreme Court or go to trial and risk punishment for a perceived lack of acceptance of responsibility.  However, the Guidelines are

Case 1:22-cr-00040-JEB   Document 68   Filed 12/31/23   Page 9 of 12

clear that, in circumstances such as these, a defendant does not manifest a lack of remorse by exercising their right to trial.  U.S.S.G. §3E1.1 cmt. n. 2 (a defendant may still receive acceptance of responsibility adjustments where he has gone to trial to "challenge [] the applicability of a statute to his conduct").

Second, the Court's misdemeanor sentences in the Capitol riot cases demonstrate that Weyer's sentence almost surely would have been lower had she not been convicted under § 1512(c).  The Court (more specifically, the Chief Judge) has sentenced around 28 misdemeanor-only Capitol riot defendants.  The average sentence in these cases appears to be approximately 30 days' incarceration, with a number of them receiving probationary sentences.  Here are some examples of the conduct involved in cases where sentences were measured in days:

- *United States v. Jancart*, 21-cr-148-JEB (**45 days' incarceration**: brought gas mask and two-way radios into Capitol; contemplated bringing a pickaxe; was among the first to enter Capitol);

- *United States v. Rau*, 21-cr-467-JEB (**45 days' incarceration**: encouraged crowd to break into Capitol; shouted to police, "We have you surrounded!"; entered Speaker's conference room; wore tactical gear; escorted out of building by police);

- *United States v. Bennett*, 21-cr-227-JEB (**no incarceration**: chanted "break it down" in the Speaker's lobby; before January 6, said, "you better be ready, chaos is coming and . . . I will be fighting for my freedom");

- *United States v. Ridge*, 21-cr-406-JEB (**14 days' incarceration**: defendant quoted saying, "Yeah just stormed the US capital [sic] for the first time in US

9

history and I was part of it"; "Yeah man so epic I have a video of me fighting riot police in the capital [sic] building"; "we broke down doors of Senator McConnell and Nancy Pelosi");

- *United States v. Hernandez*, 21-cr-747-JEB (**30 days' incarceration**: defendant stole "Keep Off Fence" sign and part of Speaker's office sign);

- *United States v. Westover*, 21-cr-697-JEB (**45 days' incarceration**: defendant chanted, "We're coming Nancy");

- *United States v. Revlett*, 21-cr-281-JEB (**14 days' incarceration**: defendant livestreamed in Capitol; made statements in Rotunda with megaphone; did not express remorse at the time of sentencing);

- *United States v. Dropkin*, 21-cr-734-JEB (**30 days' incarceration**: defendant moved around extensively in Capitol until forced out by police);

- *United States v. Valdez*, 21-cr-695-JEB (**30 days' incarceration**: defendant entered the office of Senator Merkley);

- *United States v. Charles Hand*, 21-cr-111-JEB (**20 days' incarceration**: defendant broke fencing, joined in chanting, recorded video);

- *United States v. Mandy Robinson-Hand*, 21-cr-111-JEB (**20 days' incarceration**: defendant recorded video inside building; said, "Yes Love! We love fighting for our country");

- *United States v. Ambrose*, 21-cr-302-JEB (**no incarceration**: defendant present in Speaker's lobby);

- *United States v. Valentin*, 21-cr-702-JEB (**10 days' intermittent incarceration**: defendant had to be forced out of Rotunda by police);

10

- *United States v. Zoyganeles*, 22-cr-149-JEB (**no incarceration:** defendant entered offices; said, "Just rush Capital [sic] hill"; "we need to take over the capital [sic] building tomorrow");

- *United States v. Price*, 21-cr-719-JEB (**45 days' incarceration**: defendant climbed through a broken window).

As explained, Weyer has already served 45 days of prison time—and in squalid conditions of confinement that the Court could hardly have anticipated. Unlike the defendants listed above, she is a 60-year-old mother with strong community support and a history of good deeds. Weyer Sentencing Mem., ECF 55, pp. 2-4; ECF 55-1 (60 pages of supporting letters). Meanwhile, the mandate in *Fischer* is likely to be returned no earlier than June 2024, the final month of the Supreme Court's current term. Critically, the Circuit will hold Weyer's appeal in abeyance until that time, as it has done in every Capitol riot appeal concerning a § 1512(c) conviction. If the Supreme Court were to reverse the judgment in *Fischer* in June, the appeal process would still take additional time in this matter, running months beyond the expiration of Weyer's misdemeanor sentences. The current median time interval from the filing of a notice of appeal to disposition in the D.C. Circuit is 11.3 months.[1]

As the Court knows, under the sentencing-package doctrine, all of Weyer's misdemeanor sentences would be vacated upon the reversal of her felony obstruction conviction. "This result rests on the interdependence of the different segments of the sentence, such that removal of the sentence on one count draws into question the correctness of the

---

[1] U.S. Courts of Appeals—Median Time Intervals in Months for Cases Terminated on the Merits, by Circuit, During the 12-Month Period Ending September 30, 2021 (Table B-4), available at https://www.uscourts.gov/sites/default/files/data_tables/jb_b4_0930.2021.pdf.

initial aggregate minus the severed element." *United States v. Smith*, 467 F.3d 785, 789 (D.C. Cir. 2006). Since it is not unlikely that the Court will have to address Weyer's sentence at some point in the future, it is more sensible to do so now, at the point when Weyer has served this Court's average misdemeanor sentence, rather than six months to a year afterward.

For all these reasons, a favorable resolution of the substantial question raised by Weyer is likely to result in a reduced imprisonment sentence that would expire well before her appeal concludes. Accordingly, Weyer respectfully moves for release pending appeal: relief that is particularly appropriate given her exceedingly harsh conditions of confinement and comparable misdemeanor sentences imposed by this Court in related cases.

Dated: December 31, 2023      Respectfully submitted,

*/s/ Nicholas D. Smith*
Nicholas D. Smith (D.C. Bar No. 1029802)
1123 Broadway, Suite 909
New York, NY 10010 Phone:
(917) 902-3869
nds@davidbsmithpllc.com

*Attorney for Sandra Weyer*

### Certificate of Service

I hereby certify that on the 31st day of December, 2023, I filed the foregoing submission with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s): Counsel of record.

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

*/s/ Nicholas D. Smith*