## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 22-cr-00040 (JEB)** |
| | : | |
| **SANDRA S. WEYER,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S
## MOTION FOR RELEASE PENDING APPEAL

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendant Sandra Weyer's motion (ECF No. 68), seeking release pending appeal in light of the Supreme Court's recent decision to grant *certiorari* in *United States v. Fischer*, No. 23-5572, 2023 WL 860578 (Dec. 13, 2023). Regardless of the outcome in *Fischer*, Weyer cannot establish by clear and convincing evidence that she does not pose a danger to the community and that she is not a flight risk. Weyer also cannot show that there is any likelihood that the outcome in *Fischer* will result in a reduced sentence to a term of imprisonment less than the total time already served plus the expected duration of the appeal process.

Accordingly, the Defendant's motion should be denied.

### I.     BACKGROUND AND PROCEDURAL HISTORY

On February 2, 2022, a federal grand jury returned an indictment charging Weyer with five counts: Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count One); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Two); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Three); Disorderly

Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Four); and

Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. §

5104(e)(2)(G) (Count Five).   On June 6, 2023, Weyer was convicted of all five counts following

a two-day bench trial.   On September 14, 2023, the Court sentenced the defendant as follows:

> **Count One – 18 U.S.C. § 1512(c)(2):** Fourteen (14) months of incarceration followed by twelve (12) months of supervised release to run concurrently with Counts Two through Five, and a $100 special assessment.
>
> **Counts Two and Three– 18 U.S.C. § 1752(a)(1) and (2):** Twelve (12) months of incarceration on each count followed by twelve (12) months of supervised release on each count to run concurrently with all other counts, and a $25 special assessment on each count.
>
> **Counts Four and Five – 40 U.S.C. § 5104(e)(2)(D) and (G):** Six (6) months of incarceration on each count to run concurrently with all other counts and a $10 special assessment on each count.

*See* ECF No. 63.   The Court ordered the terms of incarceration and supervised release to run

concurrently and ordered the defendant to pay $2,000 in restitution.   *Id.*   The Court allowed the

defendant to remain in the community but ordered her to voluntarily surrender to the Bureau of

Prisons ("BOP") no earlier than November 1, 2023.   *Id.*   On September 28, 2023, the defendant

filed a notice of appeal.   ECF No. 65.   That same day, Weyer also filed a motion seeking to modify

her conditions of release so she could travel to the District of Columbia to attend the trial of her

criminal associate Lynn Nester, 22-cr-183-TSC, who had similarly attended Weyer's trial.   ECF

No. 66.   This request was granted by the Court.   September 29, 2023 Minute Order.

On November 15, 2023, Weyer surrendered to BOP custody.   She is currently incarcerated

at the Federal Detention Center in Philadelphia.   After serving less than two months of her

sentence, on December 31, 2023, the defendant filed her motion, seeking release pending appeal

in light of the Supreme Court's decision to grant *certiorari* in *United States v. Fischer*.   ECF No.

68.

## II.    LEGAL STANDARD

Weyer moves for release pending appeal under 18 U.S.C. § 3143(b).  The statute does not authorize her release here.

Under 18 U.S.C. § 3143(b), a defendant who has been sentenced to a term of imprisonment "shall . . . be detained" unless the court finds that two separate requirements are met:

> (1)    "clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released," and
>
> (2)    that the appeal "raises a substantial question of fact or law likely to result in—(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."

18 U.S.C. § 3143(b)(1)(A)-(B).  The requirements for "reversal" and "an order for a new trial" encompass all counts, not just a single count.  *United States v. Perholtz*, 836 F.2d 554, 557 (D.C. Cir. 1988) (explaining that defendants "cannot be released unless the appeal raises a substantial question likely to result in reversal of *all counts* on which imprisonment is imposed") (emphasis supplied).  If a judicial officer finds that a defendant is eligible for release because the appeal is "likely" to result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process," the remedy is not immediate release; rather, "the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence."  18 U.S.C. § 3143(b)(1)(B).  It is the defendant's burden to make the requisite showing under 18 U.S.C. § 3143(b)(1)(B).  *Perholtz*, 836 F.2d at 555-56 (referring to "the required showing on the part of the defendant"); *United States v. Libby*, 498 F. Supp. 2d 1, 3 (D.D.C. 2007).

### III.    ARGUMENT

Even assuming that the *Fischer* issue now raises a "substantial question," Weyer fails to make the required showing for release.  "The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant."  Fed. R. Crim. P. 46(c).  First, she has not shown by clear and convincing evidence that she is not a flight risk nor a potential danger.   The government acknowledges that the Court, in releasing Weyer pending trial, determined that she was not a flight risk or a danger to the community at that time.  However, now that Weyer has begun to serve her actual sentence, rather than merely having been convicted and sentenced to surrender at some future time, the incentive to flee or engage in dangerous conduct has grown.  As other judges of this District have recognized, a defendant's risk of flight is heightened after she begins serving her sentence:

> Further, while [defendant's] counsel proffers that [defendant] had been fully aware of the severity of a possible sentence throughout the proceedings . . . there is a significant difference between being aware of a potential sentence and actually beginning to serve the sentence after it has been imposed.  Indeed, incarceration is a federal facility is a stark contrast to [defendant's] affluent lifestyle prior to the commencement of this action, and the possibility of returning to confinement after having experienced it heightens [defendant's] risk of flight.

*United States v. Hite*, 76 F. Supp. 3d 33, 41-42 (D.C.C. 2014), *aff'd*, 598 F. App'x 1 (D.C. Cir. 2015) (Kollar-Kotelly, J.); *see also United States v. Slatten*, 286 F. Supp. 3d 61, 69 (D.D.C. 2017), *aff'd*, 712 F. App'x 15 (D.C. Cir. 2018) (Lamberth, J.).

 These concerns are particularly salient here, unlike when Weyer was on pre-trial release, as she now knows the day-to-day reality of confinement having served approximately two months of her fourteen-month sentence.   In fact, she specifically outlined how her "conditions of confinement have been distressing."  *See* ECF No. 68, at 5.  Were she to be released pursuant to her motion, she will have served only a fraction of her fourteen-month sentence, with

approximately nine months left still to serve.  The prospect of this additional time, paired with her now visceral experience with the aspects of confinement, may make it more likely that she flees rather than returning to prison.

Weyer would not be the first January 6 defendant to flee, abscond, or fail to appear while facing a significant charge (or set of charges) or sentence.  *See, e.g.*, *United States v. Worrell*, 21-cr-292 (RCL), Dkt. 295 (defendant absconded after being initially detained and then released); *United States v. Bru*, 21-cr-352 (JEB), Dkt. 66, June 26-July 6, 2023 Minute Entries; *United States v. Burlew* (RDM), 21-cr-647 (RDM), Nov. 30, 2023, Dec. 8, 2023 Minute Entries; *United States v. Olivia Pollock and Joseph Hutchinson*, 21-cr-447 (CJN), Dkt. 208, March 6, 2023, April 6, 2023, May 19, 2023, August 7, 2023 Minute Entries; *United States v. Giustino*, 23-cr-00016 (JEB), September 29, 2023 Minute Entry; *United States v. Dennison*, 23-cr-00032 (TNM), June 5, 2023 Minute Entry; *United States v. Shawndale and Chilcoat*, 22-cr-00299, September 5, 2023, September 9, 2023, October 5, 2023, October 6, 2023, October 13, 2023 Minute Entries.  Although Weyer did attend her trial and self-surrender, that was prior to her incarceration.  Post-conviction, she provided minimal participation in the pre-sentence report process—choosing not to provide a single collateral contact for social history verification and refusing to sign release information for independent verification.  See ECF No. 56, at 13.  This, coupled with her prison experience, heightens her risk of flight.  The defendant also poses an increased danger: the country has now entered the year of what will likely be another hotly contested presidential election.  The Court would be releasing the defendant into the same political maelstrom that led her to commit her crimes in the first place.

Second, Weyer cannot show that a reversal in *Fischer* (and a subsequent reversal in her case) is likely to lead to an order for a new trial, or a non-jail sentence on *all* counts, given that

there are other counts of conviction not at issue in *Fischer*: Counts Two through Five.  Nor does she show that reversal in *Fischer* is "likely" to lead to "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process," given her four other counts of conviction.  18 U.S.C. § 3143(b)(1)(B).  The mere fact that the Supreme Court agreed to hear *Fischer* does not indicate that the opinions were wrongly decided, *see e.g., Heath v. Jones*, 941 F.2d 1126, 1131 (11th Cir. 1991) ( "[T]he grant of certiorari does not necessarily indicate that the position advocated by Heath has any merit, only that it is an important question").  Even assuming the appeal raises a "substantial question of law," Weyer does not show that it is "likely" to lead to a reversal on all counts or a reduced sentence of less than a year.

Given the broad question presented by the petitioner in *Fischer*, a myriad of possible rulings could occur – including numerous outcomes that would *not* undermine Weyer's conviction on Count One.  Moreover, even if the Supreme Court does rule in a way that undermines Weyer's conviction on Count One of her charges, the remedy for Weyer is not to release the defendant now.  Instead—unlike with release based on a reversal, likelihood of trial or non-jail sentence—the statute directs the Court to order the defendant release <u>only once she has served the amount of time she is likely to serve upon resentencing</u>, not immediately.  18 U.S.C. § 3143(b)(1)(B) (in the circumstances described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated *at the expiration of the likely reduced sentence")* (emphasis supplied).  Therefore, to release defendant based on the likelihood of a reduced sentence, the Court must calculate that reduced sentence, and defendant must still serve that amount of time before being released pending appeal.  *See, e.g.,* May 25, 2023 Order, *United States v. Brock,* D.C. Cir. Case No. 23-3045 (denying motion for release pending appeal in January 6 case where "the district court

did not specifically address what appellant's 'likely reduced sentence' would be if her conviction under 18 U.S.C. § 1512(c) is reversed. Nor has appellant made that showing…").

A reversal of the § 1512(c) conviction could increase the aggregate sentence on the remaining counts.

> [In cases] involv[ing] multicount indictments and a successful attack by a defendant on some but not all of the counts of conviction . . . the Government routinely argues that an appellate court should vacate the entire sentence so that the district court may increase the sentences for any remaining counts up to the limit set by the original aggregate sentence.  And appellate courts routinely agree.

*Dean v. United States*, 137 S. Ct. 1170, 1176 (2017).  Regardless of the implications of *Fischer*, the defendant was sentenced to 12 months of incarceration on Counts Two and Three, and six months of incarceration on Counts Four and Five—none of which are at issue in the *Fischer* appeal.  Weyer's conduct on January 6—as proven through exhibits admitted at trial and the factual findings by the Court—justifies the 12 month term of incarceration.

As this Court found, "[Weyer] was not someone who simply went along with the crowd." ECF No. 51 (Trial Verdict Tr.), at 56.  Weyer was among the first rioters to enter the Capitol Grounds by breaching police barricades on the East Front of the U.S. Capitol.  She documented her entire time at the Capitol on Facebook Live, videoing her egregious conduct openly in real-time and encouraging others to engage in similar felonious conduct.  At the metal barriers, Weyer not only encouraged others to "tear this shit down" in reference to the metal barricades set up by police on the East Front (Tr. Ex. 311), but she proudly declared that she "personally helped take down the barricades at the front of the Capitol" (Tr. Ex. 403) and that she was "laser focused on breaking the barricades."  Tr. Ex. 402.[1]  After breaching the East Front metal barriers, Weyer

---

[1] The defendant makes much of the lesser charges brought against her companions that day, Lynn Nester and Brian Korte.  ECF No. 68, at 3-4.  But different conduct results in different charges.  Unlike her companions, Weyer had a demonstrable understanding of the electoral certification—and took steps above and beyond her companions. Namely, suggesting to rioters that "we should tear this down" and yelling "tear it down!," "charge!," "hold your

paraded across the East Plaza to the bottom of the Central East Steps where she and her fellow rioters dramatically outnumbered the U.S. Capitol Police ("USCP"). Weyer and the mob marched up the steps and forcibly pushed and shoved their way toward the Rotunda Door. Once outside the Rotunda Door, Weyer commanded her fellow rioters to "hold your ground," "charge," "don't retreat," and "break that door." Tr. Exs. 204.3, 205.2, 204.7, 204.10. There was "pepper spray and OC spray being sprayed by officers and members of the crowd" and "the door alarms by the east rotunda door, also known as the Columbus doors, were going on and going on the entire time the defendant entered." ECF No. 51 (Trial Verdict Tr.), at 50-51. After the door was breached, Weyer forced her way into the Capitol building pushing past USCP officers. Once inside, she first went directly toward the Rotunda and declared, "This is awesome. We did it." Tr. Ex. 206.4. Weyer was in the Capitol building for approximately ten minutes. However, she remained on the Central East Steps for approximately an hour and fifteen minutes after exiting the building. While outside on the Central East Steps, Weyer continued to video herself bragging about her exploits: "When we got up to the steps, they, meaning the police, knew they didn't stand a chance. We were the nice ones for a long time. I think we should have done this months ago. I have been up front the entire time. I was helping break down the barricadews. Fight for Trump. I'm ready to die for my country." ECF No. 51 (Trial Verdict Tr.), at 52-53. She responded in real-time videos to her social media followers encouraging them to undertake similar illegal conduct at their local state capitols. As this Court noted, Weyer bragged that she'd "been nice for far too long" and that "[i]t's time to act violently." ECF No. 51 (Trial Verdict Tr.), at 57. This Court found that Weyer "knew there were Congresspeople inside since she referred to that" during or immediately

---

ground!", "break that door!," "forward march!," "don't retreat!" as well as admitting on video that she "was helping break down the barricades, too, and get into the door" and "personally helped take down the barricades at the front of the Capitol." Sentencing Ex. A; Tr. Exs. 311, 316, 403.

after all of this conduct.  ECF No. 51 (Trial Verdict Tr.), at 51.Any future decision holding that this conduct may not be a violation of Section 1512(c)(2) does not change that assessment.

A decision in *Fischer* is expected by June 2024, at most seven months into the defendant's current 12-month sentence on her misdemeanor Counts Two and Three, and a decision could be issued earlier.  Thus, even if the Court believes that it is "likely"[2] that the defendant would be resentenced to 12 months or less, the remedy is not to release the defendant now, or to stay her incarceration entirely.

While the government respectfully disagrees with the ultimate decisions in *United States v. Adams*, 21-cr-354-APM (ECF No. 85) and *United States v. Sheppard*, 21-cr-302-JDB (ECF No. 142), both decisions provide a framework for deciding release in this context.  Any change in the legal landscape for conviction under 18 U.S.C. § 1512 would not negate the defendant's egregious conduct on January 6, 2021 as demonstrated at trial.  While it is true that—in an adverse, post-Fischer world—this Court would rightly evaluate a possible reduction in sentence if only the misdemeanors remained, the Court would still then fashion a sentence under the 3553(a) factors that addresses the defendant's conduct on that day, including consideration of aggravating circumstances not taken into account by the Sentencing Commission in formulating guidelines for the particular statute.  18 U.S.C. § 3553(a) and (b)(1).  As Judge Kelly said, "even if it doesn't meet 1512, wouldn't I be quite entitled—it would be almost crazy if I didn't, in my view, vary up

---

[2] What is "likely" is also complex considering the posture of this, and indeed, hundreds of cases. *If* the Supreme Court reverses, and *if* it does so in a manner that actually invalidates the conviction (as opposed to retrying the defendant for §1512 under a different legal theory), and *if* the Court does not find that the guidelines nevertheless permit the use of U.S.S.G. § 2J1.2 as a basis of evaluating the defendant's relevant conduct under a preponderance standard, there is no reason to believe that this Court – or any court for that matter – would treat the crimes any less seriously given what had been previously proven at trial.  In other words, under §3553(a), the defendant cannot actually show that her likely reduced sentence would actually terminate prior to the Supreme Court's issuance of a decision in *Fischer*.

significantly because there would be no—it's still, I think we can agree, very bad—a very bad thing if someone tried to obstruct that proceeding." *United States v. Gilbert Fonticoba*, 21-cr-638 (TJK) Sentencing Tr. at 48:6 - 22 (Jan. 11, 2024).

After considering those factors, the Court should impose a higher sentence for Weyer beyond the sentences received by defendants who, for example, pled guilty, accepted responsibility, and were convicted of a sole misdemeanor count, which it could do by running sentences on the remaining offenses consecutively. Here, the "likely" period of incarceration that would be applied if only the other counts of conviction remained would extend beyond the Supreme Court's anticipated decision in or before June 2024.

For all these reasons, the defendant's motion for release should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:      */s/ Victoria A. Sheets*

VICTORIA A. SHEETS
Assistant United States Attorney
NY Bar No. 5548623
601 D Street NW
District of Columbia, DC 20530
(202) 252-7566
victoria.sheets@usdoj.gov

SARAH C. SANTIAGO
Assistant United States Attorney
G.A. Bar No. 724304
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7249
sarah.santiago2@usdoj.gov