UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case No. 1:22-cr-40-JEB |
| | ) |
| SANDRA WEYER, | ) |
| | ) |
| Defendant. | ) |

**SANDRA WEYER'S REPLY TO THE GOVERNMENT'S OPPOSITION TO HER MOTION FOR RELEASE PENDING APPEAL**

The government does not contest the following:

(1) Ms. Weyer has presented a substantial question under 18 U.S.C. § 3143(b)(1) concerning her felony conviction under 18 U.S.C. § 1512(c);

(2) she has already served a prison sentence longer than the average sentence this Court has imposed in Capitol riot cases involving Weyer's remaining misdemeanor convictions; and,

(3) she is incarcerated in unhygienic conditions that include rodents and insects in the 60-year-old woman's bed and inadequate food and clothing.
Gov't Opp., ECF 69.

However, it argues that the Court should deny Weyer's release motion on the grounds that every single person who has served prison time is a flight risk (even where the government itself determined otherwise after their arrest) and that, absent her § 1512(c) conviction, this Court would have imposed a substantially higher sentence in Weyer's case than in every one of its 28 misdemeanor-only cases arising from the Capitol riot. Gov't Opp., pp. 4-10. The Court should reject these arguments, just as every judge in this Court has done when presented with the same

1

arguments, word for word.

### A. Weyer has presented a substantial question under § 3143(b)(1)

The government does not appear to explicitly contest Weyer's position that the appeal of her § 1512(c) conviction presents a substantial question under § 3143(b)(1). Gov't Opp., p. 4 ("Even assuming that the *Fischer* issue now raises a 'substantial question. . .'"). However, at some points it appears to invite a contrary finding from the Court. *Id.*, p. 6 ("The mere fact that the Supreme Court agreed to hear *Fischer* does not indicate that the opinions were wrongly decided . . .").

To be clear, whatever the position of the individual prosecutors in this case, the government has conceded that the certiorari grant in *Fischer* means that the substantial question standard in § 3143(b)(1) is satisfied. *United States v. John Strand*, 23-3083 (D.C. Cir.), Doc. #2032976, at 8 ("The government does not dispute that, given that the Supreme Court has granted a petition for a writ of certiorari in *Fischer*, [an] appeal of [a] conviction under 18 U.S.C. § 1512 poses a substantial question within the meaning of 18 U.S.C. § 3143(b)(1)(B)."). Every district court judge to consider the issue has found the "substantial question" standard satisfied. *United States v. Adams*, 21-cr-354-APM (ECF No. 85); *United States v. Sheppard*, 21-cr-302-JDB (ECF No. 142). In the *Strand* case, the Circuit indicated that when the defendant refiles his release motion in the district court, the district court will only address the appropriate revised sentence, not whether § 3143(b)(1) is satisfied. *Strand*, 23-3083, 1/16/2024 Per Curiam Order.

Accordingly, Weyer's motion should not be denied on this basis.

### B. The government's flight risk arguments are meritless

Acknowledging that it determined Weyer was not a flight risk or danger to the community after her arrest, the government now contends that she is such a risk because she

2

has begun to serve her "actual sentence" and thus the 60-year-old woman's "incentive to flee or engage in dangerous conduct has grown." Gov't Opp., p. 4.  If this argument were sufficient to deny a § 3143 motion, virtually all people would be disqualified from relief under the statute, and not because of the individual defendant's characteristics and case facts but on the strength of a generalized incentive applicable to everyone in society.  Surely it is true that people relish freedom and find its absence disagreeable, but release and detention decisions don't turn on universals but "the specific facts and circumstances of each case." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021).[1]

The government also notes that, among the over 1,200 defendants charged in the Capitol riot cases, it can cite six who have apparently "flee[d], abscond[ed], or fail[ed] to appear . . ." Gov't Opp., p. 5.  Because that is a share of less than 1%, it is not clear what generalized point the government is attempting to make.  In any case, narrowing the field of comparison from the whole universe of criminal defendants to the hundreds of January 6 defendants does not make its argument any more about "the specific facts and circumstances of each case." *Munchel*, 991 F.3d at 1284.  Moreover, the government's citations do not avail it.  It warns the Court that a January 6 defendant called Chilcoat attempted to "flee." Gov't Opp., p. 5.  As it happens, by "flight" the government actually means (but does not say) that the defendant failed to appear for one VTC hearing.  And the example is a curious one to interpose in opposition to a § 3143 motion, for the Court recently granted Chilcoat's motion for release pending appeal despite the "flight" from teleconferencing platforms. *United States v. Chilcoat*, 22-cr-299, ECF 95.

---

[1] The government cites *United States v. Hite*, 76 F. Supp. 3d 33, 41-42 (D.D.C. 2014).  Gov't Opp., p. 4.  That case did not even concern release under § 3143.  Instead, a defendant moved for release pending trial under § 3142 and after the court of appeals had ordered a new trial on child pornography and abuse charges.  Thus, the *Hite* defendant faced the prospect of additional decades in prison, unlike Weyer who faces perhaps weeks if *Fischer* is not overturned.

Nothing distinguishes Weyer's case from that of the defendants in *Adams* and *Sheppard*, where this Court rejected identical flight arguments from the government.  The *Adams* Court noted the defendant's "strong community ties." *Adams*, 21-cr-354-APM, ECF 85, p. 2.  Here, in sentencing, the Court praised Weyer for her "strong community ties." Sentencing Tr., pp. 20, 26 ("[Y]ou are somebody who plays an active role in your community for good. . ." "I expect you to be a contributing member of your community and a positive member of your community for a great many years . . ."). The *Adams* Court observed that the defendant "appeared at all court hearings, whether in person or remotely." *Adams*, 21-cr-354-APM, ECF 85, p. 2.  That's true of Weyer.

Indeed, Weyer presents fewer red flags than the defendant in *Adams*: Adams had "criminal history, including charges for burglary" and "two violations for driving while intoxicated." *Id.*  By contrast, Weyer has no criminal history, has been married 40 years, has lived in the same Pennsylvania county her whole life, and owns a house.  All these factors cut strongly against flight.

As Judge Bates noted in rejecting the government's identical flight arguments in *Shepard*, Weyer "is not facing a lengthy sentence from which [she] might be highly motivated to flee." *Sheppard*, 21-cr-302-JDB, ECF 142, p. 4.  And the defendant in Shepard (ten weeks' incarceration) had already served  roughly the same amount of time that Weyer has (about nine weeks).  *Id.*  Judge Bates observed that, contrary to the government's argument, his time served "actually may [make him] more likely to comply with conditions of release." *Id.*

In the *Strand* case, finally, the court of appeals found that "the record suggests that appellant is not a flight risk or a danger to others"—even before the district court had considered the matter.  *Strand*, 23-3083, 1/16/2024 Per Curiam Order.  Strand's case facts are virtually

indistinguishable from Weyer's.  *United States v. Strand*, 21-cr-85-CRC, ECF 133.

Thus, the government's flight argument is meritless.  But if the Court were somehow persuaded that Weyer is now a different person than she was two months ago when the government determined she was not a flight risk, she would be willing to post a cash bond or pledge her home as a condition of release.  Accordingly, Weyer requests that the Court pursue those conditions before an outright denial of Weyer's motion.

### C. The Court's misdemeanor sentences belie the argument that it would have imposed the same sentence without a felony conviction

The government argues that Weyer has not reached "the expiration of the likely reduced sentence," § 3143(b)(1), because the Court would have imposed a sentence of 12 months' incarceration even if Weyer had only been convicted of Class A and B misdemeanors.  Gov't Opp., p. 7.  This Court's January 6 cases unequivocally refute that claim.

The Court will notice that the government does not engage with any of the sentences imposed in the Court's approximately 28 misdemeanor-only January 6 cases.  Weyer's motion showed that the Court's average sentence in such cases was about 30 days' incarceration.  She showed that in many of those cases, the defendants' conduct was worse than Weyer's.  *E.g.*, *United States v. Jancart*, 21-cr-148-JEB (45 days' incarceration: brought gas mask and two-way radios into Capitol; contemplated bringing a pickaxe; was among the first to enter Capitol); *United States v. Rau*, 21-cr-467-JEB (45 days' incarceration: encouraged crowd to break into Capitol; shouted to police, "We have you surrounded!"; entered Speaker's conference room; wore tactical gear; escorted out of building by police).

The facts cited by the government simply do not compare to cases like *Jancart* and *Rau*, among others.  The government says Weyer was "among the first rioters to enter the Capitol Grounds. . ." Gov't Opp., p. 7.  That is not accurate.  The first rioters to enter the Capitol

5

Grounds breached a barricade near the Peace Circle at the west front of the Capitol at approximately 12:55 p.m. *E.g., U.S. v. Nordean*, 21-cr-175-TFK, ECF 855, p. 5. By 1:00 p.m. the crowd covered the entire Upper West Plaza. *Id*. Additional points along the security perimeter, to the northeast, were breached close to 2 p.m. *Id*. As the government's sentencing memorandum itself states, the east front breach (where Weyer was present) did not occur until after 2 p.m., an hour after the initial breach at the west front. ECF 58, p. 5.

The government quotes Weyer's comment that she "'personally helped take down the barricades at the front of the Capitol.'" Gov't Opp., p. 7. However, the government knows that although virtually every movement of Weyer's at the east front was filmed, no footage depicts the 60-year-old pulling down or breaking barricades. The Court viewed these clips at trial. Weyer was not sentenced for embellishing her role in conversations with others.

As the government acknowledges, Weyer was in the Capitol building for no more than 10 minutes. Gov't Opp., p. 8. That is far less time than was involved in a number of cases where the Court imposed sentences between no incarceration and 45 days' incarceration. And in many if not all of those cases, the defendant did not present evidence, like Weyer, showing them searching for their sibling in the building. *United States v. Bennett*, 21-cr-227-JEB; *United States v. Ridge*, 21-cr-406-JEB; *United States v. Hernandez*, 21-cr-747-JEB; *United States v. Westover*, 21-cr-697-JEB; *United States v. Revlett*, 21-cr-281-JEB; *United States v. Dropkin*, 21-cr-734-JEB; *United States v. Valdez*, 21-cr-695-JEB; *United States v. Charles Hand*, 21-cr-111-JEB; *United States v. Mandy Robinson-Hand*, 21-cr-111-JEB; *United States v. Ambrose*, 21-cr-302-JEB; *United States v. Valentin*, 21-cr-702-JEB; *United States v. Zoyganeles*, 22-cr-149-JEB; *United States v. Price*, 21-cr-719-JEB.

Nor is there any basis for distinguishing those sentences (already served by Weyer) on

the ground that those defendants accepted responsibility by pleading guilty and Weyer did not. In the first place, Weyer was not given the opportunity to plead guilty to a Class A or Class B misdemeanor, like every single one of those defendants and, indeed, like the protesters who followed Weyer around the entire day of January 6 and whose actions were identical to hers. *United States v. Korte*, *et al.*, 22-cr-183-TSC, 7/12/2023 Minute Entry (sentencing Weyer's companion to 21 days' incarceration). Weyer cannot be punished for refusing to plead guilty to an offense leading to a conviction whose appeal is simultaneously regarded by all courts as presenting a substantial question under § 3143(b)(1). As previously indicated, the Guidelines explicitly recognize the point. U.S.S.G. §3E1.1 cmt. n. 2 (a defendant may still receive acceptance of responsibility adjustments where he has gone to trial to "challenge [] the applicability of a statute to his conduct").

But even if this Court were to compare Weyer with defendants who went to trial on her misdemeanor charges, it is clear Weyer has reached "the expiration of the likely reduced sentence." § 3143(b)(1). Consider the trial of Christopher Price. Following a bench trial, the Court found Price guilty of every misdemeanor of which it found Weyer guilty. *United States v. Price*, 21-cr-719-JEB, ECF 134, p. 2. Here is a summary of his offense conduct:

> Price (1) approached the Capitol building after walking past "Area Closed" signs and bike rack barriers, (2) continued forward after seeing rioters bang on a window of the Capitol, hearing statements like, "Are we going to kidnap Pence? That would be cool," and witnessing a person receiving CPR on the floor inside the Capitol building, (3) entered the Capitol while ignoring signs that indicated he should not, such as alarms blaring, broken glass scattering the floor, lines of police officers in rioter gear, and people climbing through windows, (4) watched as rioters breached the Capitol at the North Door, (5) texted his friend to brag about his participation in the riot, noting when he was "In" the building and stating that it was "worth fighting for Trump," and (6) has not expressed any remorse for or accepted responsibility for his actions.

*Id.*

Price appears to have remained in the Capitol longer than Weyer. *Price*, 21-cr-719-JEB,

7

ECF 134, pp. 7-8.  Unlike Weyer, Price took photos of property destruction in the building and texted them to friends in real time.  *Id.*  The government feebly attempts to explain why Weyer was charged under § 1512(c) while her constant companions that day were not.  Gov't Opp., p. 7 n. 1.  It explains, "Unlike her companions, Weyer had a demonstrable understanding of the electoral certification . . ." *Id.*  However, that perceived distinction rings rather hollow when you consider how much significance the government placed on misdemeanant Price's "understanding of the electoral certification." *Price*, 21-cr-719-JEB, ECF 134, p. 9 (Price's filming of conversation about "stealing an election" and "When you steal an election, what do you expect? The people voted.  The people voted").

This Court sentenced Price to 45 days' incarceration.  *Price*, 21-cr-719-JEB, 9/29/2023 Minute Entry.  Weyer has already served well over that amount of time and in squalid conditions of confinement.

In sum, there is no world in which Weyer could have "pled guilty [like the misdemeanant defendants], accepted responsibility and [been] convicted of a sole misdemeanor count. . ." Gov't Opp., p. 10.  There was only a world where Weyer could have pled guilty to a felony count for the same conduct undertaken by hundreds of misdemeanants—a felony count resting on an unprecedented interpretation of an obstruction-of-justice statute that omitted any interference with evidence and an investigation: the very concept of obstruction of justice.  The sad reality is that Weyer was charged as she was—and was sentenced under guidelines far stricter than those applied to factually indistinguishable defendants—because of the arbitrary and unreviewable determination of a prosecutor based on subjective personal and sociocultural factors which have no bearing on the objective harms generated by traditional obstruction of justice: the damaged integrity of information used in a truth-seeking proceeding.

**Conclusion**

The amount of prison time a defendant actually serves depends on a complex interplay between the judgment, potential reductions under the First Step Act, an inmate's security and recidivism scores and potential credit for "programming" within the BOP system.  Here, there is a risk that if the Court grants Weyer's motion but delays release for months, Weyer could end up serving more prison time than she would have if the motion were denied.  Accordingly, because she has served more time than this Court's average misdemeanor sentence in January 6 cases, and because her conditions of confinement are unhygienic, Weyer respectfully requests the relief granted in *Adams*, release at the time of decision.

Dated: January 17, 2024                             Respectfully submitted,

*/s/ Nicholas D. Smith*
Nicholas D. Smith (D.C. Bar No. 1029802)
1123 Broadway, Suite 909
New York, NY 10010 Phone:
(917) 902-3869
nds@davidbsmithpllc.com

*Attorney for Sandra Weyer*

**Certificate of Service**

I hereby certify that on the 17th day of January, 2024, I filed the foregoing submission with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s): Counsel of record.

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

*/s/ Nicholas D. Smith*