**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|  | ) |
|  | ) |
|  | ) |
| v. | ) |
|  | ) Case No. 1:22-cr-40-JEB |
|  | ) |
| SANDRA WEYER, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

**SANDRA WEYER'S MEMORANDUM IN SUPPORT OF RESENTENCING**

Sandra Weyer, by counsel, submits this memorandum in connection with her resentencing.  Weyer entered the Capitol Building on January 6 and remained inside for fewer than eleven minutes.  Most of that time she spent searching for her brother with whom she had lost contact in the crowd.  After a short bench trial, the Court found her guilty of obstruction of an official proceeding and the four misdemeanors charged in nearly every Capitol riot case.  Although the Court sentenced her to 14 months' incarceration, it later granted her motion for release pending appeal after she served over three months of that term.  Following the Supreme Court's decision in *United States v. Fischer*, 144 S. Ct. 2176 (2024), the Circuit ordered that Weyer's § 1512(c) conviction be vacated.

The case for a sentence of time served is straightforward.  Weyer, 60, served a prison sentence three times the length of this Court's average Capitol riot misdemeanor sentence.  Her conditions of confinement at FDC Philadelphia featured insects and rodents in her bedding and malnutrition.  After Weyer's release, her husband was diagnosed with liver cancer.  He passed away a couple of weeks ago.  Weyer is the caregiver for her aging and infirm mother.  In releasing her, the Court observed that it was "unlikely" she would receive more prison time.  For

1

all these reasons and others, the additional period of home confinement that the government will request would generate a sentence greater than necessary to comply with the purposes of Section 3553(a).  Weyer has been sufficiently punished for her first-time, nonviolent, duplicative misdemeanors.

**Background**

**A.   Trial and sentencing**

On June 6, 2023, the Court conducted a one-day bench trial.  As the Court will recall, Weyer traveled to Washington, D.C., on January 6 to attend the former president's political rally. After making her way to the Capitol amidst a large crowd, she observed protesters pulling down barricades positioned at the east front of the building.  The 60-year-old encouraged protesters to "hold your ground" and "don't retreat." Weyer subsequently entered the Capitol through the East Rotunda door and remained in the building for approximately 11 minutes.  Most of that time she spent searching for her brother.

Weyer was found guilty of the following charges: Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count One); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Two); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Three); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Four); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Five).

On September 14, 2023, the Court sentenced Weyer.  As the most serious offense, Weyer's § 1512(c)(2) conviction determined that the controlling Guideline would be U.S.S.G. § 2J1.2 ("Obstruction of Justice"), with a base offense level of 14.  The Court applied the specific

offense characteristic at § 2J1.2(b)(2) for substantial interference with "the administration of justice."  It also gave Weyer credit for satisfying the criteria for a two-level Zero Point Offender downward adjustment, § 4C1.1, though that section was not effective at the time of sentencing. The Court sentenced Weyer to 14 months' incarceration on the § 1512(c)(2) conviction.

In turn, the Court's determination meant that, under the Guidelines, the Court was directed to impose the "total punishment" of 14 months' incarceration on every other count of conviction, to the extent permitted by applicable statutory maxima.  U.S.S.G. § 5G1.2(b).  For that reason, the Court imposed concurrent sentences of 12 months' incarceration on Counts Two and Three and of six months' incarceration on Counts Four and Five, the statutory maxima for all those misdemeanor counts.

Based on its review of the mitigation letters submitted on Weyer's behalf, the Court remarked at sentencing that the 60-year-old mother was a valuable member of her community who, among other things, had helped businesses survive pandemic-era lockdowns.  In connection with resentencing, Weyer has filed many additional letters submitted by her family, friends and colleagues, who urge the Court to exercise leniency.  Exh. 1.

**B.  Weyer's confinement at FDC Philadelphia**

Weyer surrendered to the BOP on November 15, 2023.  Although the Court had recommended that Weyer be assigned to FCI Danbury—a minimum security facility for women—she was, in the event, assigned to FDC Philadelphia.

Weyer's conditions of confinement were distressing.  The section of the facility in which she was housed was experiencing a rodent infestation.  Regularly Weyer found mice and insects in her bedding.  Maggots and weevils were a common sight in the food hall.  As for nourishment, Weyer's diet consisted entirely of salad and fruit when it was available.  Nothing else was

available.  At one point, she had not eaten in 40 hours.  A family member commented that Weyer's eyes took on a sunken appearance.

The sole article of footwear provided to her were shower slippers; because all floors were concrete, she developed blisters on her feet.  As the temperature was kept at approximately 52 degrees at all times, Weyer had to secure extra clothing from the commissary.  It was stolen within two days. The 60-year-old woman was thus regularly cold and hungry.  She suffered migraines but could not gain access to her regular medication in the prison.  As a result, her headaches lasted for days.

A prison counselor advised Weyer that her BOP recidivism risk assessment calculation generated the lowest numbers the counselor had ever seen:

> Recidivism Risk Assessment (Pattern 01.03.00)
>  Risk level inmate....R-MIN
>  General Level......R-MIN (-9)
>  Violent Level.......R-MIN (-4)

Weyer email dated 12/22/2023.

### C. The Court releases Weyer, the *Fischer* decision, and Weyer's current circumstances

On February 27, 2024, the Court granted Weyer's motion for release pending appeal. ECF No. 72.  By that point, she had served over three months of incarceration.  In pertinent part, the Court reasoned as follows:

> Assuming the resolution of the question in *Fischer* is in Weyer's favor, the Court would likely not sentence her to much more than the time she has already served. Her 14-month sentence was driven by her § 1512(c) felony conviction, which carries a base offense level of 14 under the U.S. Sentencing Guidelines. See ECF No. 68 (Pl. Mot. for Release Pending Appeal) at 2; U.S.S.G. § 2J1.2 (Obstruction of Justice). The 12-month and 6-month sentences imposed on the remaining misdemeanor counts were in turn influenced by the Sentencing Guidelines' rule that the Court impose the total punishment on each count of conviction to the extent allowable by statutory maxima. See Pl. Mot. For Release Pending Appeal at 8; U.S.S.G. § 5G1.2(b).
>
> Without the § 1512(c) conviction, the Court would group Defendant's § 1752(a)

4

counts and apply Sentencing Guideline § 2A2.4 (Obstructing or Impeding Officers) with a base offense level of 10. It would give Weyer credit for satisfying the criteria for a two-level Zero Point Offender downward adjustment. See U.S.S.G. § 4C1.1. Taken together, an offense level of 8 with a criminal-history category of I would result in a guideline range of 0–6 months in Zone A. See U.S.S.G. § 5A. The sentence that the Court would impose on the petty offenses in Counts IV and V would then likely run concurrently with the § 1752(a) counts. See 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively."). Only an unlikely upward variance would yield a sentence greater than six months.

> *Given that Defendant has already served over three months in prison,* **she would be unlikely to receive more if her § 1512(c) conviction were reversed**.

Mem. Op., ECF No. 72, pp. 5-6 (emphasis added).

In July, the Supreme Court held that § 1512(c) is an evidence-impairment crime and does not reach conduct unrelated to evidence, such as the "direct" obstruction of an official proceeding crime the government devised for the January 6 cases. *Fischer*, 144 S. Ct. at 2180. Subsequently, the Circuit ordered the Court to vacate Weyer's § 1512(c) conviction. Mandate, ECF No. 73.

Soon after she was released from FDC Philadelphia, Weyer's husband was diagnosed with liver cancer. He passed away two weeks ago. Weyer is now managing the complicated process of settling his affairs. She is also the primary caregiver for her aging and infirm mother. Weyer takes care of the mother's medical appointments, grocery shopping, problems with a pacemaker, and other basic living requirements. While Weyer has three siblings, two of them live an hour from their mother's home and the third lives two hours away.

**Argument**

**I.      Standard for resentencing**

When the D.C. Circuit "vacates one count of a multi-count conviction, the district court on remand should begin by determining whether that count affected the overall sentence and, if

so, should reconsider the original sentence it imposed." *United States v. Blackson*, 709 F.3d 36, 40 (D.C. Cir. 2013). "[T]he district court may also consider 'such new arguments or new facts as are made newly relevant by the court of appeals' decision—whether by the reasoning or by the result.'" *Id*. (citing *United States v. Whren*, 111 F.3d 956, 960 (D.C. Cir. 1997)).  In addition, "the district court is . . . authorized to consider facts that did not exist at the time of the original sentencing. . . [such as] rehabilitation efforts that the defendant had undertaken since receiving his original sentence." *Id*. (citing *United States v. Rhodes*, 145 F.3d 1375, 1377-78 (D.C. Cir. 1998)).

## II.     The Court should impose a sentence of time served

Weyer should receive a sentence of time served for a number of reasons.  First, the Court already effectively said as much when it granted her motion for release pending appeal.  Mem. Op., ECF No. 72, pp. 5-6 ("Given that Defendant has already served over three months in prison, she would be unlikely to receive more if her § 1512(c) conviction were reversed.").

Second, as the Court also observed, Weyer's recalculated total offense level is no higher than 8, with a Guidelines range of 0–6 months in Zone A.  Mem. Op., ECF No. 72, pp. 5-6.[1] The Court observed that it would "give Weyer credit for satisfying the criteria for a two-level Zero Point Offender downward adjustment." *Id.*   Thus, "a sentence *other* than a sentence of imprisonment . . . is generally appropriate." U.S.S.G. § 5C1.1 cmt. n. 10(A) (emphasis added).

Yet, third, Weyer did serve a prison sentence—and it ran three times the length of the Court's average misdemeanor sentence in January 6 cases.  The last time counsel checked, the Court had sentenced around 28 misdemeanor-only Capitol riot defendants.  The average sentence in these cases appears to be approximately 30 days' incarceration, with a number of

---

[1] Weyer believes that the appropriate guideline is at U.S.S.G. § 2B2.3(b)(1)(A), trespass in a restricted building or grounds, not at § 2A2.4 (obstructing or impeding officers).

defendants receiving probationary sentences.  Here are some examples of the conduct involved in cases where sentences were measured in days:

- *United States v. Jancart*, 21-cr-148-JEB (**45 days' incarceration**: brought gas mask and two-way radios into Capitol; contemplated bringing a pickaxe; was among the first to enter Capitol);

- *United States v. Rau*, 21-cr-467-JEB (**45 days' incarceration**: encouraged crowd to break into Capitol; shouted to police, "We have you surrounded!"; entered Speaker's conference room; wore tactical gear; escorted out of building by police);

- *United States v. Bennett*, 21-cr-227-JEB (**no incarceration**: chanted "break it down" in the Speaker's lobby; before January 6, said, "you better be ready, chaos is coming and . . . I will be fighting for my freedom");

- *United States v. Ridge*, 21-cr-406-JEB (**14 days' incarceration**: defendant quoted saying, "Yeah just stormed the US capital [sic] for the first time in US history and I was part of it"; "Yeah man so epic I have a video of me fighting riot police in the capital [sic] building"; "we broke down doors of Senator McConnell and Nancy Pelosi");

- *United States v. Hernandez*, 21-cr-747-JEB (**30 days' incarceration**: stole "Keep Off Fence" sign and part of Speaker's office sign);

- *United States v. Westover*, 21-cr-697-JEB (**45 days' incarceration**: chanted, "We're coming Nancy");

- *United States v. Revlett*, 21-cr-281-JEB (**14 days' incarceration**: defendant livestreamed in Capitol; made statements in Rotunda with megaphone; did not

express remorse at the time of sentencing);

- *United States v. Dropkin*, 21-cr-734-JEB (**30 days' incarceration**: defendant moved around extensively in Capitol until forced out by police);

- *United States v. Valdez*, 21-cr-695-JEB (**30 days' incarceration**: defendant entered the office of Senator Merkley);

- *United States v. Charles Hand*, 21-cr-111-JEB (**20 days' incarceration**: defendant broke fencing, joined in chanting, recorded video);

- *United States v. Mandy Robinson-Hand*, 21-cr-111-JEB (**20 days' incarceration**: defendant recorded video inside building; said, "Yes Love! We love fighting for our country");

- *United States v. Ambrose*, 21-cr-302-JEB (**no incarceration**: defendant present in Speaker's lobby);

- *United States v. Valentin*, 21-cr-702-JEB (**10 days' intermittent incarceration**: defendant had to be forced out of Rotunda by police);

- *United States v. Zoyganeles*, 22-cr-149-JEB (**no incarceration:** defendant entered offices; said, "Just rush Capital [sic] hill"; "we need to take over the capital [sic] building tomorrow");

- *United States v. Price*, 21-cr-719-JEB (**45 days' incarceration**: defendant climbed through a broken window).

Of course, Weyer's conduct was far less serious than that of these defendants and she served over three months at FDC Philadelphia.

Fourth, Weyer's conditions of confinement were uncommonly harsh. As explained, the facility in which she was held had a pest infestation and she was not supplied with adequate

food or clothing.

Finally, additional prison time and/or a period of home confinement would be inappropriate in view of the recent death of Weyer's husband and her role as caregiver to her elderly and infirm mother.  Weyer visits her mother at least three times a week to carry out the responsibilities described above.  Her siblings cannot readily fulfill those obligations given that they work and live hours from the mother's home.  An additional sentence of home confinement would place her mother's well-being at risk and in order to impose a punishment harsher than any reasonable comparator's.

For all these reasons, Weyer respectfully requests a sentence of time served.

Dated: Oct. 25, 2024                    Respectfully submitted,

                                        */s/ Nicholas D. Smith*
                                        Nicholas D. Smith (D.C. Bar No. 1029802)
                                        1123 Broadway, Suite 909
                                        New York, NY 10010
                                        Phone: (917) 902-3869
                                        nds@davidbsmithpllc.com

                                        *Attorney for Sandra Weyer*

## Certificate of Service

I hereby certify that on the 25th day of October, 2024, I filed the foregoing submission with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s): Counsel of record.

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].