UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SANDRA S. WEYER,<br><br>Defendant. | Case No. 22-cr-00040 (JEB) |

**GOVERNMENT'S SUPPLEMENTARY SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this supplementary memorandum in connection with the above-captioned matter.

## I. Procedural History

On February 2, 2022, a federal grand jury returned an indictment charging Weyer with five counts: Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count One); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Two); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Three); and Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Four); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Five).

On June 6, 2023, this Court found Sandra Weyer guilty on Counts One through Five of the Indictment following a bench trial. On September 8, 2023, the government filed its sentencing memorandum in this matter, recommending a sentence of 30 months of incarceration, the high end of the then-applicable guidelines range of 24-30 months. *See* ECF No. 58. On September 6, 2023,

1

the Court sentenced Weyer to 14 months of imprisonment.

Weyer began serving her sentence on November 15, 2023. On December 31, 2023, Weyer filed a motion for release pending appeal of her conviction. On February 27, 2024, the Court ordered Weyer released pending appeal. To date, Weyer has served three months and 13 days of incarceration.

On June 28, 2024, the Supreme Court issued its decision in *Fischer v. United States*, 144 S. Ct. 2176 (2024). Following that decision, on September 9, 2024, the D.C. Circuit issued an Order directing vacatur of the felony conviction under 18. U.S.C. § 1512(c)(2). This Court has scheduled a resentencing for October 30, 2024.

With the felony conviction vacated, Weyer now must be resentenced on the remaining Counts Two through Five of the Indictment. Although the defendant's conduct on January 6, 2021, as exemplified during the trial of this matter, merit a recommendation of a term of additional incarceration, given certain unique factors present in this case, the government is recommending the defendant serve an additional nine months home incarceration, followed by one year supervised release.

**II.     Offense Conduct**

The government incorporates by reference its analysis of the § 3553(a) factors in its original sentencing memorandum. See ECF No. 58, at 1-15, 19-23. In particular, the government would highlight those facts found by the Court that:

- In addition to attending rallies on January 3 and January 5, 2021, Weyer held a sign reading, "decertify." Weyer also said "we are pissed off, fix this, decertify, and again referring to Pennsylvania's certification of President Biden as the winner of

2

the election. . . that [she] wished that to be decertified and him not to be certified as the president is the logical inference of her messages." Weyer Verdict Tr., at 50:20 – 51:5.

- "She arrives at the east barricades, and at about 1:58 p.m., while behind the barricades, she's saying 'Go. Tear it down. Tear the shit down.' She's gesturing. She's helping another rioter up who had fallen while removing barricades. She's assisting him at 1:59." Weyer Verdict Tr., at 51:16-18.

- "She is then right behind the initial group on the Capitol steps chanting, 'Stop the steal' saying, 'We broke the barricades' saying, 'Take our country back.' And after breaking through the barricades, she says, 'This is what patriotism looks like.' She says, 'Tear gas, flash bags are being dispersed. Don't retreat.' She says, 'We're going through. We're going in.' She says, 'Trying to break the fucking doors down. Chanting, 'break that door.'" Weyer Verdict Tr., at 51:22-52:4.

- And then once they make it to the Capitol steps, "she's at the front of the group by the police in the east doors saying, Go guys, go, it's us now and our house, encouraging people including those with tactical gear." Weyer Verdict Tr., at 52:7-10.

- As the Court noted in finding Weyer guilty of Count Three, "acting with others is different from acting alone [a]nd by virtue of acting with others, she clearly knew that she was disrupting the orderly conduct of government business and, in fact, did so." Weyer Verdict Tr., at 54:22-25.

- Though the applicable statutes have changed, Weyer's conduct has not: "She was

3

sophisticated in her protesting, [] she was not someone who simply went along with the crowd. Her intent to come to Washington, as she chants in the van, was four more years for the former President. . . She's been nice for too long. It's time to act violently. And that's what she does to stop this from happening." Weyer Verdict Tr., at 57:5-11.

### III.     Revised Guidelines

#### a.  Revised Guideline Calculation

The revised Final Presentence Report (ECF No. 75) correctly calculates the revised guidelines range on the remaining Counts Two through Five:

**Count Two: 18 U.S.C. § 1752(a)(1)—Entering and Remaining in a Restricted Area**

| Base Offense Level: | 4 | U.S.S.G. § 2B2.3(a) |
|---|---|---|
| Special offense characteristic | +2 | U.S.S.G. § 2B2.3(b)(1)(A)(vii): the trespass occurred "at any restricted building or grounds."  On January 6, 2021, the U.S. Capitol was restricted because protectees of the United States Secret Service were visiting. See 18 U.S.C. § 1752(c)(1)(B). |
| Total | 6 | |

**Count Three: 18 U.S.C. § 1752(a)(2)—Disorderly or Disruptive Conduct in a Restricted Building or Grounds**

| Base Offense Level: | 10 | U.S.S.G. § 2A2.4 |
|---|---|---|
| Total | 10 | |

**Counts Four and Five: 40 U.S.C. §§ 5104(e)(2)(D) & 5104(e)(2)(G)—Disorderly or Disruptive Conduct in a Capitol Building, and Parading, Demonstrating and Picketing in a Capitol Building**

| Base Offense Level: | n/a | Because these offenses are Class B misdemeanors, the Guidelines do not apply. See 18 U.S.C. § 3559; U.S.S.G. § 1B1.9. |
|---|---|---|

Counts Two and Three are grouped pursuant to U.S.S.G. § 3D1.2(b) because they involve

the same victim (Congress) and two or more acts connected by a common criminal objective. Therefore, the combined adjusted offense level, which is determined by taking the offense level applicable to the Group with the highest offense level and increasing the offense level by the amount indicated in the table at U.S.S.G. § 3D1.4, is **10**, and the attendant guideline range is 6-12 months.

Although the Court indicated that it would apply Section 4C1.1 of the United States Sentencing Guidelines to reduce Weyer's offense level by 2, the United States would argue that Weyer's repeated yells of "tear it down," and especially "break that door" and "charge" toward police officers protecting the East Rotunda doors are "credible threats of violence in connection with the offense" under 4C1.1(3) which does not allow her to qualify for -2 reduction. Though her statements were shouted as a directive to other rioters to commit violence, each of these statements could have been construed by any officer within earshot as a credible threat of violence. In fact, as Officer Marc Carrion testified at trial: "I went from protecting the door to then when it was breached and we were overrun to now basically a life safety factor where I have to now look out for my fellow officers there." Weyer Trial Tr. (June 5, 2023), at 75:14-17. This analysis is consistent with the revised PSR and the conclusion of the United States Probation Office which states that "[b]ecause the offense involved violence or credible threats of violence, the zero-point offender reduction is not warranted." USSG §4C1.1(a)(3). ECF No. 75 (revised Final Presentence Report), at paragraph 44a.

### IV.    Weyer's Statements Since Original Sentencing

In advance of sentencing, the government highlights the following additional statements made by the defendant, relevant to the defendant's remorse and acceptance of responsibility.

On May 28, 2024, Weyer gave an interview on a podcast and made the following statements:

- Minimizing her conduct, Weyer told interviewers that:
  - "Well, we went in with the crowd—basically the entire time I was in there I was searching for my little brother which I lost in the mayhem of getting in the Capitol. I was in there for 11 minutes." (*Rational Republic Podcast*, Sandra Weyer A January 6th Story, https://open.spotify.com/episode/6HqqTkcXz0iGbHWQdbLsk7, at 3:08 – 3:34)
  - "I said things that I probably shouldn't have said, but certainly I didn't violate the law by what I said. . . I mean, was just saying different things about breaking it down, tearing it down, and it was out of. . . in the moment. . . but, you know, yea nothing. . . it was just a bunch of people that were pissed off." (7:51 – 8:16)
  - "I still had no intention on [sic] going in the Capitol and, you know, when the crowd went through the barricades, I went with them." (8:16 – 8:24)
  - "We made our way up the steps and got in. The Columbus doors were opened from— they need to be opened from the inside, so somebody inside opened them. [Interviewers scoff] So we went in." (8:24 – 8:34)
- Later, when one interviewer said, "the fact that you had to do any time at all, of course, to me, is just absolutely ridiculous, I mean you didn't do anything that warranted. . ." Weyer replied: "Yea, I agree." (25:11 – 25:23)

6

These statements by Weyer were made publicly, after serving the first three months of her sentence, and seem to reflect her true feelings of perceived persecution over actions that she deems as relatively innocuous and describes as "just a bunch of people that were pissed off." Weyer's minimization of her own conduct in such a public manner pending her resentencing is telling and should be considered by the Court as evidence of whether she is truly remorseful for her conduct.

Weyer's recent comments are consistent with the views she expressed in the immediate aftermath of her breach of the Capitol. On the steps of the Capitol after exiting, she spoke glowingly of her and others' actions, couching them as necessary and a justified course of action:

> [Y]ou guys if we do not take this country back now, we are screwed. Get out to your capitols and start fighting back just like the people here in D.C. did today, you got to fight back. They ain't gonna fucking shoot ya, maybe with some pepper spray or flash bangs or something. Look at these patriots here they ain't afraid – they stormed the damn Capitol. [ . . .] Patriots are tired of it, we were the nice ones for a long time, I personally think we should have done this months ago. […] PA Capitol this is exactly what we need to do at the Pennsylvania Capitol, yeah these patriots are standing their ground.

*See Government's Trial Exhibit 207.5, 207.9, and 207.10.*

While a sentence of 12 months' incarceration would be appropriate based on the defendant's conduct, certain unique procedural factors are present here, and those procedural factors counsel in favor of the government's recommendation of 9 months' home confinement. Specifically, on October 22, 2024, undersigned counsel represented to defense counsel that the government was not planning to seek additional prison time at the resentencing. Undersigned counsel's statement regarding the anticipated sentencing recommendation was premature and in error, as the original representation had not been subjected to internal review to ensure consistency with the government's sentencing recommendations in similar cases. Nonetheless, the government acknowledges that defense counsel relied on the government's representation about its planned

request, and defense counsel both agreed to an extension for the government and then filed its own sentencing memorandum. After considering the circumstances of the email communication, defense counsel's filing of the sentencing memorandum based on that representation, and the defendant's current family circumstances, the government is willing to make an atypical recommendation here of nine months' home confinement, followed by one year supervised release. The government notes, however, that without the unique procedural circumstances present here, the government would recommend a sentence at the high-end of the guidelines, and/or likely an upward departure or variance, which is consistent with the facts of this case and the government's sentencing recommendations across other January 6 cases.

Respectfully submitted,

DATED: October 28, 2024

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ Victoria A. Sheets*
VICTORIA A. SHEETS
Assistant United States Attorney
NY Bar No. 5548623
601 D Street NW
District of Columbia, DC 20530
(202) 252-7566
victoria.sheets@usdoj.gov

SARAH C. SANTIAGO
Assistant United States Attorney
G.A. Bar No. 724304
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7249

sarah.santiago2@usdoj.gov